Filed 5/15/26  Rademacher v. American Broadcasting Companies CA2/5
# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
### SECOND APPELLATE DISTRICT
### DIVISION FIVE

| | |
|---|---|
| INGO RADEMACHER, | B344867 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 21STCV45383) |
| v. | |
| AMERICAN BROADCASTING COMPANIES, INC., | **ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING** |
| Defendant and Respondent. | **NO CHANGE IN JUDGMENT** |

THE COURT:

It is ordered that the opinion filed herein on April 24, 2026, is modified as follows:

On page 37, in the section on DISPOSITION, strike the sentence "Respondent American Broadcasting Companies, Inc., is awarded its cost on appeal."  In place of the stricken sentence, add "Each party is to bear its own costs on appeal."

There is no change in judgment.

The petition for rehearing is denied.

_____

HOFFSTADT, P. J.          MOOR, J.          KIM (D.), J.

Filed 4/24/26  Rademacher v. American Broadcasting Companies CA2/5 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| INGO RADEMACHER, | B344867 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 21STCV45383) |
| v. | |
| AMERICAN BROADCASTING COMPANIES, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Stephen I. Goorvitch, Judge.  Affirmed.

JW Howard/Attorneys, John W. Howard and Scott J. Street for Plaintiff and Appellant.

Paul Hastings, Steven Marenberg and Deisy Castro for Defendant and Respondent.

_____

Plaintiff and appellant Ingo Rademacher appeals from a judgment entered following an order granting summary judgment in favor of defendant and respondent American Broadcasting Companies, Inc. (ABC) in this employment action. On appeal, Rademacher contends triable issues of fact exist as to the following: (1) whether ABC violated the Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.) by failing to accommodate his religious objection to vaccination; (2) whether ABC wrongfully terminated him in retaliation for his political commentary; and (3) ABC breached his employment contract and the implied covenant of good faith and fair dealing.

We conclude the trial court properly found there was no triable issue of fact because: (1) Rademacher requested an exemption from ABC's vaccine policy based on his religious beliefs, but refused to provide additional information establishing that his beliefs were religious for the purposes of accommodation; (2) the ABC employees who decided that Rademacher failed to show he was entitled to a vaccine exemption and terminated his employment for failing to comply with ABC's vaccine policy were unaware of his political commentary; and (3) it was undisputed that Rademacher willfully breached ABC's vaccine policy. We therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Allegations of the Complaint

2

In December 2021, Rademacher filed his initial complaint against ABC. He was an actor on the television show General Hospital. On October 4, 2022, he filed the operative second amended complaint against ABC containing several causes of action, including discrimination under FEHA on the basis of his religious beliefs, wrongful termination in violation of public policy, and breach of his employment contract for a specified term. He alleged ABC discriminated against him based on his religious and political beliefs by refusing his request for a religious exemption to ABC's Covid-19 vaccine requirement.

## B. Motion for Summary Judgment and Supporting Evidence

ABC filed a motion for summary judgment. Among other arguments, ABC asserted Rademacher's beliefs were not sufficiently religious or sincerely held to support protection under the FEHA, and ABC could not have reasonably accommodated Rademacher's unvaccinated status in his employment as an actor working unmasked in close proximity to others. ABC also argued that Rademacher did not have viable claims for wrongful termination because adverse actions related to casting decision are not actionable. He did not have a viable breach of contract claim because failing to comply with ABC's vaccination policy breached his contract.

### 1. Decision to Impose Vaccine Mandate

ABC submitted the declaration of Paul Richardson, the Senior Executive Vice President and Chief Human Resources

Officer for ABC's parent corporation, The Walt Disney Company. Richardson initially served on a task force that Disney convened in response to the Covid-19 threat to Disney's workforce and businesses, and later was briefed on the emerging data and scientific evidence related to Covid-19 that the task force monitored. In June 2021, the Delta variant of Covid-19 posed a significantly greater health and safety risk compared to previous variants in terms of transmission, infection rates, and severity of symptoms. In July 2021, the Los Angeles County Department of Public Health issued an order requiring people to wear masks indoors, regardless of vaccination status. In response, Disney required all employees to wear masks in the office and postponed return-to-work plans.

At that time, the task force informed Richardson that the Covid-19 vaccines were safe, and moreover, effective against the Delta variant. The vaccines were effective at preventing serious illness, hospitalization, and death from the Delta variant, and also effective at reducing the spread of Covid-19, including the Delta variant. For these reasons, the task force strongly advocated mandating vaccines.

The task force also advised Richardson on workplace safety regulations and relevant public health orders by state and local governments, which, for example, required employers to obtain the vaccination status of their employees to comply with workplace safety protocols. State and local public health orders imposed strict guidelines for unvaccinated employees. Having both vaccinated and unvaccinated employees, it was administratively challenging to ensure compliance, which also favored adopting a mandatory vaccine policy.

4

Richardson considered this information when he decided on July 30, 2021, to adopt a mandatory vaccine policy for Disney and its subsidiaries, including ABC. Requiring vaccines was the most effective way to protect employees, comply with health and safety regulations and public health orders, and continue operations through the pandemic. Richardson discussed his decision with Disney's senior executive team and the task force, which agreed with his decision. Richardson announced the policy by email to employees that day. The policy initially applied only to non-union employees to allow Disney's subsidiaries to complete the collective bargaining process with the relevant unions. The July 30, 2021 email provided a link to an internal website with information about applying for an exemption from the vaccine policy.

Richardson had never heard of Rademacher until the instant lawsuit; he was not aware of Rademacher when he decided to adopt the vaccine policy in July 2021.

### 2.  Contract Renewal and Creative Decisions

ABC provided the declaration of Frank Valentini, who was the executive producer for General Hospital. Valentini explained that Rademacher executed a three-year contract in February 2019. ABC could cancel the contract at the end of any 26-week cycle with six weeks of notice to Rademacher. Contracts were suspended and extended for approximately four months due to the impact of the Covid-19 virus.

Every six months, the writers prepared long-term story plans. By July 2021, the writers told Valentini that several

5

characters would be or could be written out, including Rademacher's character.

ABC also submitted the declaration of Chris Van Etten, who is the co-head writer for General Hospital. Van Etten explained the original story arc anticipated for Rademacher's character failed to generate enthusiasm. Instead, a storyline with different characters became more successful in the spring of 2021, resulting in awards for the actors portraying those characters. By July 2021, Rademacher's role was minimal and there were no creative ideas for his character that generated more serious planning. Van Etten did not see a role for Rademacher's character going forward. Van Etten discussed this decision with Valentini, and Valentini agreed. Two other characters were written out of the show around the same time.

Van Etten could not remember whether he heard about Rademacher's comments about Covid-19 vaccines, and Van Etten does not know Rademacher's political views. Even if he did, Rademacher's views did not factor into Van Etten's views or decisions as a writer on General Hospital. Van Etten worked solely based on the storyline. Many members of the cast have differing opinions on subjects, including politics, but Van Etten does not make creative decisions based on the cast members' views or because of them. For example, actor Maurice Benard was scheduled to speak at the Republican National Convention when Donald Trump was nominated. Benard's political views did not matter to the writer and Bernard's character was not written out of the show.

Valentini also declared that Rademacher's political views, posts, and statements had nothing to do with the creative decision.

6

### 3. Social Media Posts

ABC submitted evidence of several social media posts that Rademacher made on his Instagram page. In August 2021, Rademacher posted about attending an anti-vaccine passport rally. His post was critical of vaccine passports. In reaction to the post, people created a social media campaign known as #fireIngo calling for Rademacher's termination for his views.

In reaction, he posted, "My post was not anti-vaccine. It was anti vaccine passport/mandate. If you want to get the vaccine because you have a fear of dying from this virus, talk to your doctor and decide. This is about freedom to choose what's best for you. A huge percentage of our population have already recovered from covid and have natural immunity, why does that not count? Please let that question sink in. Taking the vaccine does not stop you from getting COVID, spreading it, or dying from it. Now would be a good time to be honest and start following the science."

On August 25, 2021, he posted a video on his Instagram page in which he stated, "Some more research on the science on this vaccine. Now the CDC's already come out and it was pretty much right from the start, you had a 95% effectiveness rate for this vaccine. It was never supposed to stop the spread. And it's never going to stop the spread of this virus. So mandating it doesn't make sense at all. And also excluding all the people who have already had COVID, you know that doesn't make any sense either. Because they have better immunity than you do if you got vaccinated. Facts are more important than whatever emotions you have going on."

7

The same day, he posted, "To all the bigots that called for my firing at GH and made #fireIngo trend [praying hands emoji] (thanks for the press btw) about a post of mine that is factually correct.  Getting vaccinated does not stop you from spreading the virus.  That's straight from the CDC.  Mandating any vaccine is wrong but especially one that doesn't help stop the spread, that's nothing short of crazy talk.  If you want to take the vaccine, take it.  Just know you're doing it for yourself, not to save anyone else.  You're not a hero.  [shrugging emoji]"

On August 29, 2021, he posted, "Make no mistake, this is the fight of our lives.  The fight to have the freedom to choose.  It has zero to do with your political beliefs or [whether] you've been vaccinated or not.  [US ]stand strong America!"

### 4.  Vaccine Mandate Applicable to Rademacher

ABC submitted the declaration of Dominick Nuzzi, who is the vice president of production and administration for ABC daytime television.  Nuzzi received an email on September 2, 2021, notifying him that the SAG-AFTRA union had agreed, on behalf of its members, to a mandatory vaccination policy for the cast of General Hospital.  Rademacher is a member of SAG-AFTRA.

That same day, a production manager sent an email to Valentini and Nuzzi reflecting changes anticipated for the show's budget in the next fiscal year, 2022.  The email showed three actors had contracts ending the following year who would not be picked up for renewal.  Rademacher's contract was ending June 19, 2022, and he was not being picked up.

Nuzzi responded that they had "a notice date" of November 5, 2021, to tell Rademacher whether his contract was being picked up for the last cycle. Nuzzi wondered, "Why can't we drop him then? He may not be able to work if he refuses to get fully vaccinated any way."

Valentini wrote, "I worry with the #fireIngo we might be sued if we drop him in November but that was my initial intention -to let him go in November." Valentini declared that he wanted to avoid any perception that ABC acquiesced to the social media campaign, even though the creative decision to write off Rademacher's character predated the social media campaign.

The following day, on September 3, 2021, Valentini and Nuzzi announced by email that the Covid-19 vaccine mandate applied to the cast and crew of General Hospital. Employees were advised that they could seek an accommodation based on religious or medical reasons. Employees needed to be vaccinated by November 1, 2021, unless they qualified for a religious or medical exemption.

Valentini declared that in Rademacher's job as an actor, he was required to interact closely with other cast and crew members, separated by less than three feet, without personal protective equipment. Rademacher's character often hugged, kissed, or embraced co-stars, as dictated by the scripts. There was no way to implement any increased safety protocols without having an impact on the creative direction or other artistic aspects of the show.

**5.  Request for Vaccine Exemption and Termination**

ABC also submitted the declaration of Employee Relations Director Erin Nguyen, the ABC employee who evaluated and denied Rademacher's request for a religious exemption from ABC's vaccine mandate.  In October 2021, she was promoted from senior manager to director.  Since the beginning of the pandemic, she has handled approximately 100 to 150 requests for religious or medical exemptions or accommodations related to Covid-19.

On October 11, 2021, Rademacher applied for a religious exemption to the Covid-19 vaccine mandate by email, stating he was entitled to an exemption based on "my deeply and sincerely held moral belief that my body is endowed by my creator with natural processes to protect me and that its natural integrity cannot ethically be violated by the administration of artificially created copies of genetic material, foreign to nature and experimental."

Nguyen responded the following day, thanking Rademacher for the submission and asking about his availability to discuss his request.  Ultimately, Rademacher agreed to participate in a conversation by telephone on October 26, 2021.  Nguyen took contemporaneous notes during the conversation.

In her notes, she wrote Rademacher suspected there were kids in the cast who were not eligible for vaccination.  Under the current protocols, when the actors worked every day, they were tested two or three times per week.  He explained his objection to the vaccine consistent with the statement in his request for an exemption.  It was not morally permissible to be injected with such substances.  He reduces toxicity as much as possible, eats

10

healthy, organic food, with as little intervention from western medicine as he can.  Stress causes toxicity in his body.  He has not taken any vaccines as an adult.

Asked if he was a follower of a religion or spiritual community, he stated, "Look, my beliefs are religious and sincere, but you do not have the right to ask about my religious basis or conscious about whether they are true."  He asserted that spiritual beliefs cannot be determined to be true, and asking about his religious beliefs was actionable as religious discrimination.  Under the law, his beliefs did not need to be based on religion.

Nguyen explained that the company understood people may not belong to a recognized religion to articulate sincerely-held religious or spiritual beliefs, but the company needed to understand whether an objection to the vaccine was religious or spiritual in nature, as opposed to a reason that the company would not consider for accommodation, such as a personal belief or lifestyle choice.  She explained that for something to be a religious or spiritual belief, it would typically be based on broader teachings, a system of beliefs, rather than simply an objection to vaccines.  Rademacher's view was that spiritual beliefs cannot be proven, and questioning his religious sincerity was a violation of his civil rights.

Her notes reflect that all Rademacher would say was that his beliefs are religious and sincere.  Asked if his beliefs had informed any of his other choices for medical care or interventions, he expressed that his beliefs do not need to be based on religion or a belief in God, but only his conscience.  He did not believe that he needed to explain any more than he already had.

11

Toward the end of the conversation, when Nguyen asked if there was anything else that she should know, Rademacher said he had been on the show for 25 years and would love to keep working there for another 25 years, but he had already "been written out of the show." Nguyen did not have a clear understanding of what he was referring to.

Based on the conversation, Nguyen found Rademacher did not qualify for a religious exemption. Her decision was based on Rademacher's refusal to engage with her about the substance of his religious or spiritual beliefs. Nguyen sent him an email informing him of the decision. She gave him additional time to become vaccinated.

Rademacher responded that he had no intention of becoming vaccinated "by November 5 or at any time after that."

Nguyen declared that she was the person who determined Rademacher did not qualify for a religious exemption to the Covid-19 vaccine mandate and his political views did not play any role in her decision. Throughout the interactive process, she was unaware of Rademacher's political views. She never discussed the substance of Rademacher's request for a religious exemption with Nuzzi, Valentini, or any other person responsible for the content or casting decisions on General Hospital. Other than providing status updates about the timing of her decision, she had no conversations with Nuzzi or Valentini about Rademacher's request.

About a month after her decision, she learned Rademacher had posted on the social media platform Instagram and she viewed some of his posts.

In the course of the lawsuit, she learned that the creative executives for General Hospital had decided to write

Rademacher's character out of the story lines. She was not aware of this information when she made the decision about his request for a religious exemption.

ABC also submitted the declaration of Business Affairs Director Lisa Gagliardi. Gagliardi's duties include sending notices of breach or default if an actor violates the terms or conditions of the actor's agreement with ABC. On November 5, 2021, after being advised Rademacher's request for a religious exemption had been denied and he confirmed that he had no intention to get vaccinated as required by ABC's policy, Gagliardi sent correspondence to Rademacher's manager that ABC was terminating the employment agreement for failure to comply with the Covid-19 policy.

Gagliardi declared the sole reason ABC terminated the employment agreement was Rademacher's failure to comply with ABC's vaccination policy. Gagliardi had no knowledge of Rademacher's political views when she sent the termination notice and his political views did not enter into her decision-making process.

In addition to the above, Van Etten declared that he has never spoken to Nguyen about Rademacher's accommodation request and was not aware of the request until the lawsuit was filed. Valentini declared that he received status updates from Nguyen about the timing of her decision for the show's scheduling purposes, because alternate storylines must be developed as a contingency in case accommodation requests were not granted, but he never had any conversations with Nguyen about Rademacher's request, nor did he have any input on the decision to approve or deny his accommodation request. Nuzzi also declared that other than receiving a few status updates about the

timing of Nguyen's decision related to the show's schedule for shooting scenes involving Rademacher's character, Nuzzi never had any conversations with Nguyen about Rademacher's request for an exemption. Nuzzi had no input on the decision to approve or deny his accommodation request.

ABC submitted additional evidence to demonstrate the careful attention to evolving scientific information that resulted in the vaccine mandate. They also submitted evidence of Rademacher's posts on social media and interviews after the date that he was terminated.

### 6.  Additional Evidence

ABC submitted Rademacher's deposition testimony. Asked whether he withheld any information from ABC related to his religious beliefs in connection with his application for a religious exemption, Rademacher stated that he did not answer certain questions because he believed the questions were a violation of his civil rights. There was information that he did not provide to ABC because he believed it violated his civil rights to provide the information. He tries not to put anything in his body that is not natural, or he limits it to keep his body as healthy as possible and reduce toxicity. His religious beliefs are very private and personal to him, so he did not think it was for his employer to know. He knowingly withheld information about his religious beliefs from ABC that he later shared in his deposition because he believed it was a violation of his civil rights to get into the details of his religious beliefs. After reviewing Nguyen's notes from their conversation, he said nothing stood out as inaccurate.

He had taken a general position of hosting more conservative views on his Instagram website. He did not know who made the decision to terminate his employment based on his political beliefs, assuming that happened. He did not know of a specific post or subject that led to his termination, simply because he sided with conservative views.

## C. Opposition to Motion for Summary Judgment and Supporting Evidence

Rademacher filed an opposition to the motion for summary judgment and supporting evidence. He argued that he was entitled to summary adjudication, under his competing motion for summary adjudication, of the claim for failure to accommodate his religious beliefs because Nguyen had testified she had no reason to doubt the sincerity of Rademacher's beliefs but made no effort to accommodate them. Disney accommodated some employees who expressed religious objections to the vaccine policy; a jury could decide that Disney could have accommodated Rademacher. Throughout the pandemic, he had tested frequently for Covid-19, and wore a mask on and around the set, including rehearsals. He did not have any intimate scenes, because according to the lead writer, they could not find a love interest for his character after spring 2021.

In addition, he argued a jury could conclude ABC terminated his contract because of his political commentary. He also asserted that he did not breach any of his contractual duties, and a jury could find ABC violated the implied covenant of good faith and fair dealing.

### 1. Rademacher's Declaration

In support of his opposition, Rademacher submitted his declaration. He declared that he had not received any vaccines as an adult and he provided details explaining his religious beliefs. He was uncomfortable sharing his religious views with Nguyen, as he considered them a private matter. Nguyen never said that she doubted the sincerity of his religious beliefs or practices. The sole reason given for terminating his contract on November 5, 2021, was his failure to comply with the vaccine policy.

In October 2019, Rademacher wrote an email message to Valentini confirming dates for an event. He mentioned that he preferred Donald Trump to Hilary Clinton, but was not a Republican and did not agree with everything Trump said. Rademacher's focus was his passionate support for environmental protection.

### 2. Rademacher's January 2021 Social Media Posts

In January 2021, Rademacher posted a message on Instagram about violence during Black Lives Matter rallies. He also posted a picture of the mob on January 6, 2021, and stated, "President @realDonaldTrump supporters pulling Antifa terrorists away from building. There's plenty of these videos. Why isn't the #mainstreammedia reporting?" He also posted messages thanking Trump for four incredible years and praising Matt Gaetz.

An Instagram user replying to the General Hospital Instagram page included Valentini's Instagram account in a

16

message, stating, "There is a difference between being Conservative and being a nut who supports violence, racism & sedition.  @ABC_Publicity #gh #GeneralHospital I can't watch as long as NaziJax #IngoRademacher is still on the show. @valentinifrank."  Multiple similar messages criticized ABC and General Hospital for continuing to employ Rademacher.

An ABC employee informed Valentini about a social media account where fans criticized Rademacher's political posts, and Valentini agreed to have the digital marketing team monitor Rademacher's social media accounts, as they did for primetime shows.

Later that month, Rademacher sent an email to Valentini complaining that he had not had a story line worthy of submitting for award consideration.  He added, "Please be honest with me.  If this is about cancel culture or about my slightly different political views, that some people might feel I need to be punished for, which . . . is happening all over our country right now, then I hope you can nip this.  Understand I'm for truth and freedom of speech no matter of political party or views.  This is happening all over the place so I don't think it's weird to bring up.  Conservative views are being silenced and people being fired. I just hope Disney and ABC supports freedom of speech like it has been communicated to us in many HR meetings."

In February 2021, Nancy Grahn, another actor on General Hospital, sent Valentini copies of Rademacher's social media posts about Grahn.  She blocked Rademacher years earlier.  She ended her message, "I really appreciate your advocacy here.  It means a lot."  In a series of messages between Grahn and Valentini, Grahn complained about bullying by Rademacher and another actor.  Valentini was sympathetic, furious for her and for

the show's brand, and promised to report the matter to human resources.

### 3. Other Employer Documents

Rademacher provided several of the company's documents related to Covid-19 pandemic policies, which evolved from encouraging employees to become vaccinated to mandating vaccination. On July 28, 2021, an employee named Christine McCarthy wrote to a group, including Richardson, "Google announced they are postponing [return to work] until October and requiring vaccines. [¶] I think we should reconsider requiring vaccines. We now have multiple large companies and states, cities, counties making it a requirement for their workers. Given the break through issue with vaccinated people I think it is unfair to have unvaccinated people potentially putting vaccinated people at risk." Another employee in the group responded, "Josh and I had that exact same conversation today." Richardson agreed they were all reaching the same conclusions.

Story notes in July 2021 listed several characters whose shelf life was coming to an end on the show, including possibly Rademacher's character Jax. The notes observed, "What is Jax's role going forward? How do we write him off in a dramatic way?"

### 4. August Social Media Posts and Exemption Request Updates

In August 2021, Grahn sent several messages to Valentini expressing strong health concerns that she had about working with unvaccinated actors and demanding additional protections.

On August 21, 2021, she texted Valentini attachments of Rademacher's social media posts about the anti-vaccine passport rally. Valentini responded, "Good luck with that."

Valentini texted a screenshot of Rademacher's social media post about the anti-vaccine passport rally to Nuzzi. Nuzzi replied, "Ready for a recast!" Valentini answered, "Yup."

On August 25, 2021, an ABC employee asked Nuzzi when he would announce the vaccine mandate for General Hospital and whether it would result in discussion on social media. Nuzzi stated he anticipated it would; Rademacher had been vocal on social media and a different employee had refused to get the vaccine.

On August 27, 2021, an ABC employee named Mary K. Weir sent a link to an article about the social media campaign based on Rademacher's criticism of vaccines and vaccine passports. A recipient outside the company responded, "He is such an idiot!" Valentini was one of the recipients copied on the message.

In text messages, Valentini told Weir that she "missed a brutal week." "All went well but craziness re: [Rademacher, Grahn, and] COVID Schedules." Weir responded, "[Grahn] is a nutter about the vaccine but I don't blame her frustration with [Rademacher.] He is an ignorant racist." Valentini replied, "Yup he is." To a text message that Valentini received from a different person about Rademacher's rants on social media, Valentini replied, "He's nuts."

On September 3, 2021, an ABC employee thanked Nuzzi for the vaccine mandate policy. He asked what the situation was with Rademacher and another actor. He joked that he had been working on his Australian accent and if Nuzzi had a black t-shirt,

19

they were qualified to take over the roles.  Nuzzi responded that he would not be interested in the role, and added that it was too soon to tell what the actors would do.

On October 25, 2021, Valentini and Nuzzi exchanged emails with information about the last dates that Rademacher and another employee were shooting scenes, in light of the looming deadline for vaccination.  Nuzzi stated that he would ask Nguyen whether the employees had been contacted about their accommodation requests.

Nuzzi emailed Nguyen, asking about the status of the accommodation requests for Rademacher and another employee and explaining that it was their last taping week on the show before the vaccine verification deadline.  Nguyen responded that she was trying to schedule a time to speak with Rademacher the following day, as well as with the other employee.

Nuzzi forwarded Nguyen's message to Sarah Murphy-Katz, who was a manager of current programming.  Murphy-Katz asked for clarification whether both employees accommodation requests had been denied by the reviewing committee or whether the review process would not be complete before the deadline. Nuzzi responded that the requests were still under review. Murphy-Katz noted that the communication process around the accommodation reviews was not very clear.  Nuzzi agreed that the communication process was a little sketchy, but he attributed it to employee relations being overwhelmed with requests and only two people handling the process, so he did not fault them.

Murphy-Katz sought an update again about the review process from Nuzzi on November 2, 2021.  She stated both employees had worked their last dates due to not being vaccinated, submitted accommodation requests under review,

and were unlikely to return under the vaccine mandate given their beliefs and actions.

On November 2, 2021, Nuzzi responded that there was no update. It seemed the only way to return to General Hospital was if they decided to get the vaccine or the vaccine mandate was lifted in the future.

### 5. Nguyen Deposition Testimony

Rademacher submitted excerpts of Nguyen's deposition testimony. When Nguyen sent her initial message on October 12, 2021, to schedule a conversation about Rademacher's request for a religious exemption, she had no reason to doubt the sincerity of his beliefs. She had never spoken with him, read anything about him, and had no idea who he was.

Nguyen was the ultimate decision-maker who denied Rademacher's request for a religious accommodation because he had not shared sufficient information to conclude that he would be prevented from being vaccinated due to a sincerely held religious or spiritual belief. She consulted two individuals in making her decision, attorney Tanya Menton and Jennifer Simis. She reviewed the information that she gathered from Rademacher with Menton and they discussed whether it was sufficient to support an exemption to the policy. She did not know who Nuzzi was, and Nuzzi was not involved in any way in the decision to deny Rademacher an accommodation. She knew Valentini, but he was not involved in the decision to deny Rademacher's request for accommodation.

As a result of her conclusion that he had not established a religious belief preventing him from being vaccinated, Nguyen

21

did not engage in an analysis of whether he could be accommodated or would present a health and safety risk.

Rademacher also submitted Nuzzi's deposition testimony stating that he and Valentini never had to make a decision whether to terminate Rademacher's services because he wasn't eligible to continue to work. Rademacher also submitted Valentini's deposition testimony, Richardson's deposition testimony, and the declaration of his attorney, Scott Street.

## D.     Reply and Trial Court Ruling

ABC filed a reply arguing that no triable issues of fact existed. A hearing was held on April 5, 2023, on Rademacher's motion for summary adjudication and ABC's motion for summary judgment. The court took the matter under submission.

On June 5, 2023, the trial court issued a written order granting ABC's motion for summary judgment and denying Rademacher's motion for summary adjudication. With respect to the cause of action for discrimination under the FEHA, the court found Rademacher refused to cooperate with the interactive process. ABC was entitled to inquire about, and Rademacher was required to provide, information supporting the religious nature and sincerity of his belief. An employee cannot refuse to provide information necessary to evaluate the request for accommodation, then sue when the request is denied. Moreover, no reasonable accommodation was possible in light of Rademacher's job duties. Rademacher's political activities are not a protected category under the FEHA.

Rademacher's allegations of wrongful termination were based on asserting statutory and constitutional rights, including

22

his right to religious freedom, right to bodily integrity, and rights protected by the FEHA, which were all derivative of his other causes of action. Rademacher also alleged that ABC fired him for expressing unpopular political and social views. To assert a cause of action for wrongful termination in violation of public policy, he must identify a violation of a constitutional, statutory, or regulatory provisions. Labor Code section 1101 prohibits employers from making, adopting, or enforcing rules or policies that prevent employees from engaging in political activity or which control employee's political activities. But there was no evidence that ABC implemented the Covid vaccine policy to curtail political activities, and Rademacher had not identified any other rule or policy at issue.

To the extent that Rademacher relied on the prohibition in Labor Code section 1102 against coercing employees' political activities through the threat of termination, no triable issue had been shown. ABC satisfied its burden with evidence that Rademacher was terminated as a natural consequence of being unvaccinated and the person who made the termination decision was unaware of his political views at the time of the termination. Rademacher failed to produce evidence showing the stated reason was false. Some of his evidence lacked temporal proximity to the termination decision. There was no evidence that the executives and coworkers who disagreed with Rademacher's political views played any role in the termination decision.

Rademacher's contract required him to comply with all ABC's policies, and it was undisputed that he did not comply with the vaccine policy, so there were no triable issues of fact concerning breach of contract.

Rademacher filed a notice of appeal from the June 5, 2023 order granting summary judgment. After the appeal from the June 5, 2023 order was fully briefed, this appellate court discovered that no final judgment had been entered yet, so the appeal was dismissed as taken from a nonappealable order.

Judgment was entered on December 18, 2024. Rademacher filed a motion for new trial based on new evidence, which the trial court denied after a hearing. Rademacher filed a timely notice of appeal from the December 18, 2024 judgment.

## DISCUSSION

### A. <u>Standard of Review</u>

Summary judgment is appropriate "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) "[T]he party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law. . . . There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850, fns. omitted.) In ruling on the motion, the court must draw all reasonable inferences from the evidence in the light most favorable to the opposing party. (*Id.* at p. 843.)

"The defendant is not required conclusively to negate an element of the plaintiff's cause of action. The defendant need

only show the plaintiff cannot establish at least one element of the cause of action, such as by showing the plaintiff does not possess, and cannot reasonably obtain, needed evidence.  [Citation.]"  (*Weber v. John Crane, Inc.* (2006) 143 Cal.App.4th 1433, 1438.)  The burden then shifts to the plaintiff to show a triable issue of material fact exists.  (§ 437c, subd. (p)(2).)  "The plaintiff . . . shall not rely upon the allegations . . . of its pleadings . . . but, instead, shall set forth the specific facts showing that a triable issue of material fact exists . . . ."  (*Ibid.*) We review a decision on a summary judgment motion de novo. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.)

**B.**     **Failure to Accommodate Religious Beliefs**

Rademacher contends a triable issue of fact exists with respect to his claim for failure to accommodate his religious beliefs.  We conclude the undisputed evidence showed Rademacher refused to provide information to ABC to make them aware that he had a bona fide religious belief requiring accommodation.

FEHA makes it unlawful for an employer to "discriminate against a person in compensation or in terms, conditions, or privileges of employment because of a conflict between the person's religious belief or observance and any employment requirement, unless the employer . . . demonstrates that it has explored any available reasonable alternative means of accommodating the religious belief or observance, including the possibilities of excusing the person from those duties that conflict with the person's religious belief or observance . . . , but is unable

to reasonably accommodate the religious belief or observance without undue hardship . . . ."  (Gov. Code, § 12940, subd. (*l*)(1).)

"[T]he employee must establish a prima facie case that he or she had a bona fide religious belief, of which the employer was aware, that conflicts with an employment requirement." (*Soldinger v. Northwest Airlines* (1996) 51 Cal.App.4th 345, 370 (*Soldinger*).)  "Once the employee establishes a prima facie case, then the employer must establish it initiated good faith efforts to accommodate or no accommodation was possible without producing undue hardship."  (*Ibid.*)

A religious belief does not require a belief in God or Gods, but must be more than "a philosophy or a way of life."  (*Friedman v. Southern California Permanente Medical Group* (2002) 102 Cal.App.4th 39, 49 (*Friedman*).)  Employers are not required to " 'accommodate what amounts to a "purely personal preference." ' "  (*Id.* at p. 57.)  "Among the factors to be considered are whether the belief system occupies in a person's life a place *parallel* to that of God in recognized religions and whether it addresses ultimate concerns thereby filling a void in the individual's life.  [Citation.]"  (*Id.* at p. 49.)  California courts often consider federal authority for guidance on the concept of religion.  (*Ibid.*)

A prima facie case does not require proof that the religious practice is mandated by the employee's religion.  (*California Fair Employment & Housing Com. v. Gemini Aluminum Corp.* (2004) 122 Cal.App.4th 1004, 1013–1014 (*Gemini*).)  "The relevant inquiry is the sincerity, not the verity of the employee's religious beliefs."  (*Ibid.*)  Equal Employment Opportunity Commission (EEOC) guidelines state:  "In most cases whether or not a practice or belief is religious is not at issue.  However, in those

26

cases in which the issue does exist, the [Equal Employment Opportunity] Commission will define religious practices to include moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views. . . . The fact that no religious group espouses such beliefs or the fact that the religious group to which the individual professes to belong may not accept such belief will not determine whether the belief is a religious belief of the employee or prospective employee. . . ." (29 C.F.R. § 1605.1, fn. omitted.)

In *Gemini*, an employee requested time off to attend a religious convention on a certain date. He explained to his employer that he was a Jehovah's Witness. (*Id.* at p. 1010.) When his request was denied, the employee spoke with his employer further about his responsibility to be at conventions based on the encouragement of the ministry. (*Ibid.*) He described his religious tradition and provided details about how his religious obligation conflicted with his work obligations. After he missed work, he was fired. In litigation, the employer argued the evidence was insufficient to establish a prima facie case because the employee had not shown attendance at the convention was *obligatory* or required. The *Gemini* court rejected this argument.

The *Gemini* court relied on *Heller v. EBB Auto Co.* (9th Cir. 1993) 8 F.3d 1433, 1439 (*Heller*). In *Heller*, the Ninth Circuit found it was sufficient that the employer knew the plaintiff was Jewish, knew the plaintiff's wife had been studying for conversion to Judaism, and the plaintiff explained to his employer when he made his request that he needed time off to attend his wife's conversion ceremony. (*Ibid.*) "A sensible approach would require only enough information about an

27

employee's religious needs to permit the employer to understand the existence of a conflict between the employee's religious practices and the employer's job requirements." (*Ibid*.) "Any greater notice requirement would permit an employer to delve into the religious practices of an employee in order to determine whether religion mandates the employee's adherence. If courts may not make such an inquiry [citations], then neither should employers." (*Ibid*.)

The *Gemini* court acknowledged, however, there was no dispute in that case whether the Jehovah's Witness sect was a religion. (*Gemini, supra,* 122 Cal.App.4th at p. 1014, fn. 6.) "When the issue arises whether a belief or set of beliefs constitutes a religion, however, ' "a court must, at least to a degree, examine the content of the supposed religion, not to determine its truth or falsity, or whether it is schismatic or orthodox, but to determine whether the subject matter it comprehends is consistent with the assertion that it is, or is not, a religion." [Citation.]' (*Friedman v. Southern Cal. Permanente Medical Group, supra,* 102 Cal.App.4th at p. 60 [veganism].)" (*Gemini, supra,* 122 Cal.App.4th at p. 1014, fn. 6.)

In contrast, in *Friedman*, the appellate court concluded veganism alone is not a "religious creed" within the meaning of FEHA. (*Friedman, supra,* 102 Cal.App.4th at p. 43.) The court stated, "We do not question plaintiff's allegation that his beliefs are sincerely held; it is presumed as a matter of law that they are. However, we disregard conclusory allegations, for example, that plaintiff's beliefs 'occupy a place in [his] life parallel to that filled by God in traditionally religious individuals adhering to the Christian, Jewish or Muslim Faiths.' [Citations.] First, plaintiff believes 'that all living beings must be valued equally and that it

is immoral and unethical for humans to kill and exploit animals even for food, clothing and the testing of product safety for humans'; further, it is 'a violation of natural law' to transgress this belief. There is no allegation or judicially noticeable evidence plaintiff's belief system addresses fundamental or ultimate questions. There is no claim that veganism speaks to: the meaning of human existence; the purpose of life; theories of humankind's nature or its place in the universe; matters of human life and death; or the exercise of faith. There is no apparent spiritual or other worldly component to plaintiff's beliefs. Rather, plaintiff alleges a moral and ethical creed limited to the single subject of highly valuing animal life and ordering one's life based on that perspective. While veganism compels plaintiff to live in accord with strict dictates of behavior, it reflects a moral and secular, rather than religious, philosophy. [Citation.] Second, while plaintiff's belief system governs his behavior in wide-ranging respects, including the food he eats, the clothes he wears, and the products he uses, it is not sufficiently comprehensive in nature to fall within the provisions of [California Code of Regulations, title 2, section] 7293.1. Plaintiff does not assert that his belief system derives from a power or being or faith to which all else is subordinate or upon which all else depends. [Citations.] Third, though not determinative, no formal or external signs of a religion are present. There are no: teachers or leaders; services or ceremonies; structure or organization; orders of worship or articles of faith; or holidays. [Citation.] [¶] Absent a broader, more comprehensive scope, extending to ultimate questions, it cannot be said that plaintiff's veganism falls within the scope of regulation 7293.1. Rather, plaintiff's veganism is a personal philosophy, albeit shared by

29

many others, and a way of life." (*Friedman, supra*, 102 Cal.App.4th pp. 69–70.) The court noted that its decision did not resolve whether a vegan lifestyle resulting from a religious belief that otherwise meets the legal standard is subject to FEHA. (*Id.* at pp. 70–71.)

"The reasonableness of the employer's efforts to accommodate is determined on a case by case basis. What is reasonable for one employee may not be reasonable for another. [Citation.] The obligation to search for an acceptable solution is bilateral. Employees also have the obligation to make a good faith effort to explore alternatives." (*Soldinger, supra*, 51 Cal.App.4th at p. 370.)

"Both employer and employee have the obligation 'to keep communications open' and neither has 'a right to obstruct the process.' [Citation.] 'Each party must participate in good faith, undertake reasonable efforts to communicate its concerns, and make available to the other information which is available, or more accessible, to one party. Liability hinges on the objective circumstances surrounding the parties' breakdown in communication, and responsibility for the breakdown lies with the party who fails to participate in good faith.' [Citation.]" (*Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1014.)

In this case, it is undisputed that Rademacher applied for a religious exemption from ABC's vaccine policy and that ABC initiated an interactive process to discuss his request. It is also undisputed that Nguyen asked Rademacher basic questions to understand whether his objection to the vaccine was religious or spiritual in nature, as opposed to a reason that the company would not consider for accommodation, such as a personal belief

or lifestyle choice. Rademacher refused to answer questions about his beliefs or provide any additional information, stating that his beliefs did not need to be based on religion, and in his view, even asking about his religious beliefs was actionable as religious discrimination and a violation of his civil rights.

To satisfy the elements of his claim, Rademacher was required to show ABC was aware he had a sincerely held religious belief, which conflicted with an employment requirement. Unlike a Jehovah's Witness convention or a Jewish conversion ceremony, his objection to vaccination was not obviously or inherently related to religion. His statement that he has a "sincerely held moral belief that my body is endowed by my creator with natural processes to protect me and that its natural integrity cannot ethically be violated" does not establish that his "beliefs, observances, or practices" have "a place of importance parallel to that of traditionally recognized religions[.]" (See *Friedman, supra*, 102 Cal.App.4th at p. 69.) His conclusory statements that his beliefs were religious and sincere were not sufficient to inform ABC of his beliefs requiring accommodation. Rademacher conceded in his deposition that he did not answer questions about his religious beliefs in connection with his application for a religious exemption. Under the circumstances, his limited and conclusory statements to ABC were not sufficient to establish ABC was aware of a bona fide religious belief Rademacher held which conflicted with a requirement of employment.

Based on the information submitted in connection with the summary judgment motion, the trial court properly concluded there was no triable issue of fact on the claim for failure to accommodate because Rademacher refused to answer limited

31

questions about his religious or spiritual beliefs that would allow ABC to understand what religious belief, observation, or practice needed accommodation, and to confirm the sincerity and religious nature of the request. There was no evidence that ABC requested intrusive information or extensive documentation about Rademacher's religious beliefs beyond a limited inquiry to establish he met the criteria for exemption. Because he refused to answer Nguyen's questions, he failed to provide basic information to establish that he had a bona fide religious belief precluding vaccination, which ABC was aware of. ABC was entitled to summary judgment of his accommodation claim.

## C. <u>Wrongful Termination Based on Political Commentary</u>

Rademacher contends there is a triable issue of fact as to whether he was wrongfully terminated based on his political commentary. We disagree.

"The elements of a cause of action for wrongful discharge in violation of public policy are '(1) an employer-employee relationship, (2) the employer terminated the plaintiff's employment, (3) the termination was substantially motivated by a violation of public policy, and (4) the discharge caused the plaintiff harm.' (*Yau v. Allen* (2014) 229 Cal.App.4th 144, 154.)" (*McDoniel v. Kavry Management, LLC* (2025) 114 Cal.App.5th 949, 962–963.)

The public policy prohibiting employers from terminating an employee for engaging in political activity is found in Labor Code section 1101, which provides: "No employer shall make, adopt, or enforce any rule, regulation, or policy: [¶] (a)

Forbidding or preventing employees from engaging or participating in politics . . . [or] [¶] (b) Controlling or directing, or tending to control or direct the political activities or affiliations of employees." Labor Code section 1102 provides: "No employer shall coerce or influence or attempt to coerce or influence his employees through or by means of threat of discharge or loss of employment to adopt or follow or refrain from adopting or following any particular course or line of political action or political activity."

In this case, however, based on the facts presented to the trial court, there was no evidence from which a trier of fact could conclude Rademacher's employment was terminated based on his political views or political commentary. Nguyen had not heard of Rademacher before she reviewed his request for exemption, and she was not aware of his political views during the interactive process. She was the ultimate decision-maker who made the determination that he had not shared sufficient information from which to conclude he was prevented from being vaccinated due to a sincerely held religious or spiritual belief. She consulted two individuals in making her decision, attorney Tanya Menton and Jennifer Simis. She reviewed the information that she gathered from Rademacher with attorney Menton and they discussed whether it was sufficient to support an exemption to the policy. Nguyen did not know Nuzzi, and Nuzzi was not involved in the decision to deny an exemption. Nguyen knew Valentini and provided status updates about the timing of her decision, as reflected in their email exchanges, but she never discussed the substance of Rademacher's request with Valentini, and Valentini was not involved in the decision to deny the exemption.

Business Affairs Director Lisa Gagliardi was advised that Rademacher's request for a religious exemption had been denied and he did not intend to get vaccinated as required by ABC's policy. Gagliardi sent correspondence to Rademacher's manager that ABC was terminating Rademacher's employment agreement for failure to comply with the Covid-19 policy. Gagliardi declared the sole reason ABC terminated the employment agreement was Rademacher's failure to comply with ABC's vaccination policy. Gagliardi had no knowledge of Rademacher's political views when she sent the termination notice.

There was no evidence relied on in the trial court proceedings from which a trier of fact could conclude that the decision-makers terminated Rademacher's employment due to his political views or political commentary. The evidence showed the employees who made decision to deny a vaccine exemption and Rademacher's resulting termination for failure to comply with ABC policy were not aware of Rademacher's political views. Rademacher's assertion that he was terminated due to his political commentary is speculative and unsupported by the evidence. Summary judgment was properly granted on the wrongful termination claim.[1]

---

[1] On page 34 of Rademacher's reply brief in this appeal, for the first time, he cites evidence that the producers intended to have a meeting with "Tanya" to discuss Rademacher's employment, which apparently referred to attorney Menton, more than a month before Nguyen consulted with Menton about Rademacher's request for exemption. The reply brief does not, however, cite to the correct volume of the appellant's appendix for the evidence. There is no evidence that a meeting took place. In his opposition to the motion for summary judgment, Rademacher did not argue that there was a connection between the producers

and Nguyen through attorney Menton, and in the separate statement of material facts, he does not refer to a meeting between the producers and attorney Menton. There is no evidence that a connection to Nguyen through attorney Menton was raised in the trial court proceedings at all. There was also no mention of a connection to Menton in Rademacher's briefs submitted in connection with the nonappealable order granting summary judgment, and Rademacher did not mention the issue in his opening brief in the present appeal. Even at oral argument, Rademacher did not mention a potential connection to Nguyen through attorney Menton until his rebuttal argument, leaving ABC with no opportunity to respond.

In ruling on a motion for summary judgment, the court must consider all of the evidence submitted, except the court may disregard evidence that is not referenced in the separate statement of material facts. (*San Diego Watercrafts, Inc. v. Wells Fargo Bank* (2002) 102 Cal.App.4th 308, 315−316.) "Whether to consider evidence not referenced in the moving party's separate statement rests with the sound discretion of the trial court, and we review the decision to consider or not consider this evidence for an abuse of that discretion." (*Ibid*.) "On the other hand, where evidence is not referenced, is hidden in voluminous papers, and is not called to the attention of the court at all, a summary judgment should not be reversed on grounds the court should have considered such evidence. Appellate courts need not address theories that were not advanced in the trial court." (*Ibid*.) Because a connection between the producers and Nguyen through attorney Menton was not raised below, it would be unfair to ABC to consider this contention raised for the first time in the reply brief on appeal. We decline to consider the evidence.

35

**D.     Contract Claims**

Rademacher contends triable issues of fact exist as to his claims for breach of contract and breach of the implied covenant of good faith and fair dealing.  We conclude that the trial court correctly granted summary judgment as to these claims.

The elements of a cause of action for breach of contract are "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." (*Reichert v. General Ins. Co.* (1968) 68 Cal.2d 822, 830.)  "The covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the *benefits of the agreement actually made*." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 349.)

Labor Code section 2924 governs employment for a specified term as follows:  "An employment for a specified term may be terminated at any time by the employer in case of any willful breach of duty by the employee in the course of his employment, or in case of his habitual neglect of his duty or continued incapacity to perform it."

There was no triable issue of fact as to whether Rademacher willfully breached ABC's COVID-19 vaccination policy.  On appeal, Rademacher contends the trier of fact could conclude ABC unfairly frustrated the purpose of the employment contract by using a sham accommodation process to cover up that he was written out of the show based on his political views.  But there is simply no evidence from which a trier of fact could reasonably conclude the accommodation process was a sham or

36

the employees who made the termination decision had any knowledge of Rademacher's political views.  Summary judgment was properly granted.

## DISPOSITION

The judgment is affirmed.  Respondent American Broadcasting Companies, Inc., is awarded its costs on appeal.
NOT TO BE PUBLISHED.


MOOR, J.

WE CONCUR:


HOFFSTADT, P. J.


KIM (D.), J.

37